# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE VILLASENOR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant.<br>_____/ | Case No. 1:21-cv-00548-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.　　INTRODUCTION

Plaintiff Enrique Villasenor ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.　　FACTUAL BACKGROUND

On September 21, 2018, Plaintiff protectively filed an application for SSI payments, alleging he became disabled on December 31, 2012, due to back/orthopedic issues. (Administrative Record ("AR") 19, 79–80, 91–92, 193, 213, 215.) Plaintiff was born on April 25, 1969, and was 49 years

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

old on the date the application was filed.  (AR 26, 79, 91, 193, 213, 215.)  He has at least a high school education and is able to communicate in English.  (AR 26, 39, 197.)  Plaintiff has past work as a construction worker.  (AR 26, 38, 40, 197.)

**A.    Relevant Medical Evidence[3]**

Plaintiff presented for physical therapy in July 2017, complaining of "constant" and "aching" low back pain.  (AR 316–18.)  At his session in August 2017, he was assessed with low back pain with radicular symptoms.  (AR 309.)  He was noted to have an antalgic gait, reduced range of motion, and positive straight leg-raise testing, but "unremarkable" neurologic examination and no lower extremity deficits.  (AR 312, 313, 317.)  Upon discharge in December 2017, it was noted that Plaintiff met all his goals and he was recommended to continue with a home exercise program.  (AR 314.)

In November 2017, Plaintiff presented to his primary care provider seeking an excuse for jury duty because he is "unable to sit/stand for prolonged periods without discomfort" and "bending movements also aggravate pain."  (AR 272.)  Upon examination, Plaintiff was observed to be "sitting stiff in chair upon entering room."  (AR 274.)  His lumbar spine had no gross deformities or edema.  (AR 274.)  There was limited flexion and tenderness to palpation to Plaintiff's paraspinal muscles that was worse on the light side.  (AR 274.)  He was directed to continue with physical therapy and pain management.  (AR 274.)  Later than same month, Plaintiff's physical examination was normal.  (AR 279.)

Plaintiff requested a referral for additional physical therapy in December 2017, stating that it "seems to be what helps with [his] back pain the most."  (AR 281.)  Upon examination, Plaintiff had no gross deformities, but tenderness to palpation to Plaintiff's paraspinal muscles and pain with flexion.  (AR 282.)  His straight leg raising test was positive.  (AR 282.)  No clubbing, cyanosis, or edema was noted, and Plaintiff's neurological and sensatory examinations were intact, with normal strength, tone, and gait.  (AR 282–83.)  Plaintiff was prescribed meloxicam and referred back to

---

[3] As Plaintiff's assertion of error is limited to the ALJ's consideration of Plaintiff's subjective complains of pain, only evidence relevant to these arguments is set forth below.

physical therapy.[4] (AR 283.)

In June 2018, Plaintiff presented to his primary care provider to follow up on his physical therapy referral for chronic low back pain, which he reported he did not receive. (AR 284.) Upon examination, Plaintiff had no gross deformities, but tenderness to palpation to the paraspinal muscles and pain with flexion. (AR 286.) His straight leg raising test was positive. (AR 286.) No varicosities or edema was noted, and Plaintiff's neurological examination showed he was "alert and oriented," with normal gait. (AR 286.) His referral for physical therapy was resubmitted. (AR 286.)

Plaintiff received physical therapy from August to October 2018. (AR 241–71.) He complained of pain rating "6/10" in his lower back, and noted pain aggravation when bending down, lying down, and prolonged sitting. (AR 270.) Upon examination, Plaintiff had normal gait, normal strength and neurological findings, with a positive straight leg raising test and tenderness to palpation at his lumbar paraspinals. (AR 243–44, 261–62.) He experienced a "slight decrease" in pain after some sessions. (AR 247, 253.) Upon discharge, it was noted Plaintiff was "very independent with his exercises, and there's no reason [he] cannot continue at home for maintenance program . . . . In general, [Plaintiff] has plateaued." (AR 244.)

Plaintiff presented to his primary care provider in December 2018 for routine care. (AR 324–28.) He reported chronic low back pain, but noted that physical therapy had helped his symptoms. (AR 324.) Plaintiff's physical examination was normal, with normal gait, grossly intact neurologic exam, and no edema or varicosities. (AR 327.) Plaintiff was continued on his meloxicam and encouraged to continue with home exercises. (AR 328.)

At an August 2019 primary care appointment, Plaintiff reported that his back pain was "starting to worsen some." (AR 334.) The pain was "typically worse" when sitting or standing for prolonged periods or bending down, and would sometimes "radiate into the left buttock/lower extremity." (AR 334.) He stated that he was taking meloxicam, which provided "temporary relief." (AR 334.) Plaintiff expressed an interest in going back to physical therapy. (AR 334.) Upon examination, he exhibited tenderness to palpation, reduced range of motion, and positive straight leg

---

[4] Meloxicam is a nonsteroidal anti-inflammatory drug (NSAID) used to relieve pain and swelling. *See* U.S. Nat'l Library of Med., "Meloxicam," https://medlineplus.gov/druginfo/meds/a601242.html (last visited Dec.16, 2022).

raising test on the left, but intact reflexes, an intact neurological examination, and normal gait. (AR 337.) Plaintiff was continued on meloxicam, recommended to obtain an MRI, and referred for additional physical therapy. (AR 338.)

An MRI of Plaintiff's lumbar spine performed in October 2019 showed an "[a]nnular tear or cleft to the left of the midline at L4-5 with moderate left neural foraminal narrowing" and "[f]acet arthropathy throughout the lumbar spine." (AR 333.)

That same month, Plaintiff participated in physical therapy sessions. (AR 360–65.) He had limited thoracic range of motion and mild tenderness to palpation throughout the lumbar paraspinals, but no lower extremity strength deficits were noted. (AR 364.) The provider stated that Plaintiff "requires skilled therapy to restore prior level of function utilizing the treatment and modalities described in [the] plan of care." (AR 360, 364.)

**B.  Plaintiff's Statement**

In March 2019, Plaintiff completed an "Exertion Questionnaire." (AR 203–05.) Plaintiff stated that he lives in a house with family. (AR 203.) He described his disabling symptoms as preventing him for sitting, standing, or walking for long periods, and that he needs to change positions on a regular basis. (AR 203.) When asked what kinds of things he does on an average day and how those activities make him feel, Plaintiff responded that he wakes up, changes positions, watches television, goes to the library once a week, and tries to complete light chores. (AR 203.) He stated that he is tired and in pain after walking three blocks, which takes him 15 minutes. (AR 203.) Plaintiff reported that he avoids stairs, occasionally lifts a gallon of milk, and can only carry less than five pounds "not far." (AR 204.) His brother helps him shop for groceries monthly. (AR 204.) Plaintiff straightens his bed but needs help with cleaning. (AR 204.) He does not drive or do yard work. (AR 204.) Plaintiff reported that he needs help from family to perform chores and takes frequent breaks. (AR 205.) Plaintiff sleeps for 7 hours and rests for two hours per day. (AR 205.) He reported taking meloxicam once a day. (AR 205.)

**C.  Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on April 19, 2019, and again on reconsideration on July 1, 2019. (AR 19, .) Consequently, Plaintiff requested a hearing

4

before an Administrative Law Judge ("ALJ"). (AR 122–37.) At the hearing on May 18, 2020, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 38–52.)

### 1. Plaintiff's Testimony

Plaintiff testified he lives in a house with his mother, brothers, sister, and his sister's boyfriend. (AR 39.) He stated he suffers from back problems due to a lack of cartilage in the discs in his back. (AR 40–41.) Plaintiff testified he is in pain in the morning and throughout the day, until he takes pain medication before going to bed. (AR 41.) He does not sleep well at night, and when the medications wear off around 4:00 a.m., he is awakened by the pain and begins "tossing and turning." (AR 49.) Plaintiff testified he takes naps three days a week. (AR 50.)

According to Plaintiff, he has difficulty bending and reaching for things while sitting, walks with a limp, and can only do so for 20 minutes at a time. (AR 43.) He testified he cannot stand and/or sit for longer than 10 minutes. (AR 43–44.) Plaintiff cannot lift more than 10 pounds. (AR 46.) In a typical day he wakes up, walks around the block, watches television, then "get[s] up again, walk[s] around." (AR 47.) He testified he cooks meals and helps with washing dishes "once in a while" but that he has difficulty standing. (AR 47–48.) Plaintiff can do grocery shopping "as long as the bag isn't that heavy to lift." (AR 49.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had the following past work as a construction worker, as classified at his prior hearing. (AR 37–38.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 84.) The VE was also to assume this person is limited to a light exertional level with the following additional limitations: frequent balancing; and occasional stooping, crouching, crawling, climbing, and kneeling. (AR 53.) The VE testified that such a person could not perform Plaintiff's past work, but could perform other light jobs in the national economy with a specific vocational preparation (SVP)[5] of 2, such as sales

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

attendant, Dictionary of Operational Titles (DOT) code 299.677-010; cafeteria attendant, DOT 311.677-010; and clothing sorter, DOT code 222.687-014. (AR 54.)

The ALJ asked the VE to consider a person with the same limitations as in the first hypothetical, but with a sedentary instead of light exertional level. (AR 54.) The VE testified that such a person could not perform Plaintiff's past work, but could perform other sedentary jobs in the national economy with an SVP of 2, such as order clerk, DOT code 209.567-014; parts polisher, DOT 713.684-038; and inspector, DOT code 669.687-014. (AR 54.) The VE further testified that being off task more than 10% of the workday, or missing two or more days of work per month, is work preclusive. (AR 55.)

Plaintiff's attorney asked the VE to consider a third hypothetical regarding the first hypothetical person but with the additional restriction of a "sit/stand option at will." (AR 55–56.) The VE testified that the representative jobs previously identified would not be available, but that "there's some limited range of light jobs that offer the ability to alternate between sitting and standing." (AR 56.)

### D. The ALJ's Decision

In a decision dated May 19, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 19–28.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 22–28.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since September 21, 2018, the application date (step one). (AR 22.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the lumbar spine and obesity. (AR 22.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 22.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[6] and applied the

---

[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and

assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except that he can occasionally stoop, crouch, crawl, climb, and kneel; and may only frequently, as opposed to constantly, balance.

(AR 23–26.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 24.)

The ALJ determined that Plaintiff was unable to perform his past relevant work of construction worker (step four) but that, given his RFC, he could perform a significant number of other jobs in the national economy, specifically sales attendant, cafeteria attendant, and clothing sorter (step five). (AR 27.) The ALJ concluded Plaintiff was not disabled from September 21, 2018, through the date of their decision. (AR 28.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 8, 2020. (AR 5–10.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous

---

'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

7

work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

8

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints. (Doc. 13 at 8–15; Doc. 16 at 3–4.) The Acting Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 15 at 5–10.) The Court agrees with the Acting Commissioner.

### A. Legal Standard

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the symptoms alleged. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1281–82 & n.2 (9th Cir. 1996). The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick*, 157 F.3d at 722*; Bunnell*, 947 F.2d at 343, 345. If the ALJ finds the claimant's testimony not credible, the ALJ "must specifically make findings which support this conclusion." *Bunnell*, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so."[7] *Smolen*, 80 F.3d at 1283-84; *see also Reddick*, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. *Reddick*, 157 F.3d at 722; *Smolen*, 80 F.3d at 1284.

### B. Analysis

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 22.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and

---

[7] The Court disagrees with the Acting Commissioner that a lesser legal standard applies. (*See* Doc. 15 at 6 n.3.)

limiting effects of these symptoms were "not entirely consistent" with the RFC. (AR 22.) Because the ALJ did not make any finding of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom allegations. *Smolen*, 80 F.3d at 1283-84; *Tommasetti*, 533 F.3d at 1039–40.

Here, the ALJ provided at least three valid reasons for not fully recrediting Plaintiff's testimony and allegations.

### 1. Inconsistency with Medical Evidence

Plaintiff testified that his low back pain prevents him standing for more than 20 minutes at a time, he cannot stand and/or sit for no longer than 10 minutes, and he cannot lift more than 10 pounds. (AR 43–44, 46, 203–205.) However, the ALJ found Plaintiff's subjective symptom testimony to be inconsistent with the objective medical evidence, which "establishe[d] that clinical examination findings and objective medical studies have been largely mild to moderate overall and at least relatively stable." (AR 24.)

An ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment]." *Burch*, 400 F.3d at 680. Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, as summarized by the ALJ, despite some evidence of tenderness to palpation and reduced range of motion in Plaintiff's low back, the record shows unremarkable neurological findings, full strength and tone, and normal gait. For instance, Plaintiff's neurologic examination in July 2017 was "unremarkable," with no lower extremity deficits found. (AR 312, 313, 317.) In November 2017, Plaintiff's physical examination was normal. (AR 279.) That next month, Plaintiff had no gross deformities, no clubbing, cyanosis, or edema, and his neurological and sensatory

11

examinations were intact, with normal strength, tone, and gait. (AR 282–83.)

Plaintiff's examination in July 2018 was similar, with no varicosities or edema noted, and a neurological examination showing he was "alert and oriented" with normal gait. (AR 286.) During physical therapy sessions from August to October 2018, Plaintiff had normal gait, normal strength and neurological findings. (AR 243–44, 261–62.) In December 2018, Plaintiff's physical examination was normal, with normal gait, grossly intact neurologic exam, and no edema or varicosities. (AR 327.) Plaintiff's August 2019 physical examination had similar findings, including intact reflexes, an intact neurological examination, and normal gait. (AR 337.) An MRI of Plaintiff's lumbar spine performed in October 2019 showed an "[a]nnular tear or cleft to the left of the midline at L4-5 with moderate left neural foraminal narrowing" and "[f]acet arthropathy throughout the lumbar spine." (AR 333.) That same month, no strength deficits in Plaintiff's lower extremities were noted during a physical examination. (AR 364.)

The Court finds the ALJ's conclusion that the evidentiary record, showing "clinical examination findings and objective medical studies have been largely mild to moderate overall and at least relatively stable," is inconsistent with Plaintiff's subjective statements and testimony is supported by substantial evidence. The ALJ's determination that Plaintiff's complaints are inconsistent with the objective medical evidence is therefore a clear and convincing reason for discounting his subjective symptom testimony. *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence). *See also* 20 C.F.R. § 416.929(c)(3).

### 2. Conservative Treatments

Next, the ALJ noted that, despite Plaintiff's testimony, the medical record demonstrates Plaintiff has received "conservative treatments overall."[8] (AR 24.) As the ALJ observed, although Plaintiff was assessed with degenerative disc disease of the lumbar spine (*see* AR 338), at most his

---

[8] Plaintiff criticizes the ALJ's "conclusion that physical therapy alleviated [Plaintiff's] pain enough to render his symptoms not as serious as alleged" (Doc. 13 at 11), but the ALJ made no such conclusion. Instead, the ALJ simply observed, correctly, that the record contained evidence that Plaintiff had reported "some improvement" of his pain symptoms because of his treatments. (AR 24. *See also, e.g*., AR 281 (stating that physical therapy "seems to be what helps with [his] back pain the most"); AR 324 (noting that physical therapy had helped his symptoms); AR 334 (reporting that meloxicam provides "temporary relief").) It is the conservative nature of these treatments, and not Plaintiff's response thereto, on which the ALJ predicated their credibility determination. (*See* AR 24.)

treatments during this adjudicative period consisted of physical therapy and the prescription medication meloxicam. (*See* AR 205, 241–71, 274, 283, 286, 316–18, 324, 328, 334, 338, 360–65.) Based on these conservative treatments for Plaintiff's low back pain during the adjudicative period, which are documented by the record, the ALJ was entitled to discount Plaintiff's credibility. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Circ. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed); *Jones v. Comm'r of Social Sec.*, No. 2:12–cv–01714–KJN, 2014 WL 228590, at *7–10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found that plaintiff's conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished plaintiff's credibility).

Accordingly, the ALJ's adverse credibility determination based on Plaintiff's conservative treatments will not be disturbed.[9]

### 3. Activities of Daily Living

Finally, the ALJ determined that Plaintiff's activities of daily living are "not as limited to the extent one would expect given his allegations of disabling symptoms." (AR 25.) As summarized by the ALJ, the record demonstrates Plaintiff occasionally cooks meals (AR 47, 48), straightens his bed and washes dishes (AR 47, 48, 203, 204), shops for groceries (AR 49, 204), walks short distances (AR 47, 203), watches television (AR 47), visits the library weekly (AR 203), and spends time with family (AR 39, 204, 205).

An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when

---

[9] Plaintiff points out that he underwent epidural injections prior to the previous ALJ denial and asserts that this cuts against a finding of "conservative" treatment. (*See* Doc. 13 at 11; Doc. 16 at 3–4.) To the contrary, the fact that Plaintiff's treatment during the current adjudicative period is ***more*** conservative supports the ALJ's characterization. Moreover, at least one Ninth Circuit panel has "reject[ed a claimant's] argument that the ALJ erred in characterizing her treatment as conservative, particularly regarding her injection and cervical fusion surgery." *See Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019). Even if the ALJ erred by describing Plaintiff's treatment as conservative, the ALJ offered other clear and convincing reasons for discounting his testimony discussed herein, rendering any error harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

evaluating credibility). Moreover, in evaluating a claimant's credibility, an ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

The Court finds that Plaintiff's above-described activities tend to suggest that he may still be able to perform, on a sustained basis, the basic demands of the representative occupations identified by the ALJ (see AR 27). *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

The record also contains some contrary evidence, such as Plaintiff's statements that ability to perform household chores is hampered by pain. (*See* AR 47, 48, 49.) The ALJ's decision properly

recognized that Plaintiff has some work limitations because of this. (*See* AR 23). The Court concludes, however, that the ALJ properly discredited Plaintiff's testimony that his limitations render him ***completely*** unable to work. *Fair*, 885 F.2d at 604; *see also Bunnell*, 947 F.2d at 346 ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence."). Where the ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it. *Rollins*, 261 F.3d at 857 (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

In sum, the Court finds the ALJ discounted Plaintiff's subjective symptom allegations for at least three clear and convincing reasons supported by substantial evidence.[10]

## V.   CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **December 30, 2022**                  /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE

---

[10] Both parties devote portions in their briefing to the ALJ's consideration of the state agency physicians' prior administrative medical filings, with the Acting Commissioner arguing that such supports the ALJ's adverse credibility determination. (*See* Doc. 13 at 12; Doc. 15 at 12.) But, as Plaintiff correctly points out, "[t]he ALJ did not expressly articulate this as a reason for discounting [Plaintiff's] testimony." (Doc. 13 at 12.) This Court's review is limited to the rationale provided by the ALJ, and, as such, the Court does not consider post-hoc rationalizations and inferences advanced by the Acting Commissioner to justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").